IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF WEST VIRGINIA
(MARTINSBURG DIVISION)

CHESTER MOORE,

  Plaintiff,

-vs-

DISH NETWORK, LLC.

  Defendant.
_____/

CASE NO.: 3:13-cv-36 (Groh)
Electronically Filed March 22, 2013

## COMPLAINT

Plaintiff, CHESTER MOORE, by and through his undersigned counsel, sues the Defendant, DISH NETWORK, LLC, and in support thereof respectfully alleges the following:

1. Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

## JURISDICTION AND VENUE

2. This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney's fees and cost.

3. Jurisdiction and venue for purposes of this action are appropriate and conferred by 47 U.S.C. §227(b)(3), 47 U.S.C. §227(c)(5).

4. Venue is proper in this District because the Plaintiff resides here and Defendant transacts business in Jefferson County, West Virginia.

## FACTUAL ALLEGATIONS

5. Plaintiff is a natural person, and citizen of the State of West Virginia, residing in Jefferson County, West Virginia.

1

6. Defendant is a corporation and a citizen of the State of Colorado with its principal place of business at P.O. Box 6655 Englewood, CO 80155.

7. The conduct of Defendant which gives rise to the cause of action herein alleged occurred in Jefferson County, West Virginia.

8. Defendant, at all times material, was attempting to collect on a Dish Network account and/or was making calls on a Dish Network account of which Plaintiff has no knowledge as Plaintiff has never had a Dish Network account nor done business with Dish Network, LLC.

9. Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone number several times a week, from January, 2012 through August, 2012, with such frequency as can reasonably be expected to harass, all in an effort related to the subject Dish Network account.

10. Each call the Defendant made to the Plaintiff was made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C §227(a)(1) (hereinafter "ATDS").

11. Each of the autodialer calls the Defendant made to the Plaintiff's cellular telephone number was done so without the "prior expressed consent" of the Plaintiff.

12. In approximately January, 2012, Plaintiff began receiving autodialer calls from Defendant on his cellular telephone number, (304) 995-2882, concerning a debt and/or account which Plaintiff had no knowledge of. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number, (304) 995-2882, and was the called party and recipient of Defendant's autodialer calls.

13. The autodialer calls from Defendant came from telephone numbers which included, but are not limited to: 888-846-8290 and/or 866-668-8047.

14. After receiving several of these autodialer calls every week in January, 2012 from Defendant, in or about February, 2012, Plaintiff returned the call and spoke with Defendant's representative "Maria," ID number Y12, and informed her that he was not a Dish customer, nor was he ever a Dish customer, he did not owe them any money and that they were calling the wrong number. Plaintiff requested the calls from Defendant stop and to be taken off the Defendant's call list. Maria assured Plaintiff that his number would be placed on the Do Not Call List.

15. Despite informing Defendant that he was not the person Defendant was attempting to contact, to stop calling, that he was not a Dish Network customer and did not owe the subject debt, the Defendant's ATDS calls to Plaintiff's cellular phone continued. Plaintiff in or about March of 2012, called Defendant again and spoke with a Dish supervisor, "Ferdie," ID number 89K, in an attempt to get Defendant's autodialer calls to stop. Ferdie also told the Plaintiff that the calls would stop.

16. The autodialer calls from Defendant continued approximately, on average, three (3) to seven (7) times a week from January, 2012, until approximately August, 2012. Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of autodialer calls made to Plaintiff over the relevant time period.

17. While Plaintiff did not keep detailed records of all the autodialer calls made by Defendant to Plaintiff's cellular telephone number, attached hereto as **Exhibit "A"** is a true and correct copy of a snapshot of Defendant's autodialer call frequency for the period of July 16, 2012 through August 8, 2012, showing approximately fifteen (15) calls over that period.

18. Attached as **Exhibit "B"** is a true and correct copy of the transcript of the artificial or prerecorded voice message used and left by Defendant during its autodialer calls to Plaintiff's cellular telephone.

19. During the time period of February, 2012 through August, 2012, Plaintiff returned Defendant's autodialer calls approximately thirty-three (33) times in an effort to stop the harassing calls, all to no avail, as the autodialer calls continued.

20. The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, and to make autodialer calls just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or the Defendant, to remove the incorrect number.

21. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, well-beyond February, 2012, when Plaintiff first advised Defendant that they were calling the wrong number, that he did not owe the subject debt, and to stop calling Plaintiff.

22. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite these individual, like Plaintiff, explaining to the Defendant that they are the wrong party, that they did not owe the debt in question, and advising Defendant to stop calling.

23. Defendant's corporate policy provided no means for the Plaintiff to have his number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

24. Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their ATDS in a manner which makes it virtually impossible for the automated calls to stop.

25. Defendant knowingly employing methods that did not permit the cessation of or suppression of calls to the Plaintiff's cellular telephone.

26. Plaintiff did not expressly consent to Defendant's placement of autodialer calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or the use of an artificial or prerecorded voice prior to Defendant's placement of the calls.

27. Due to Defendant's constant autodialer calls and demands for payment and/or demands for location information for individuals other than Plaintiff, Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

## COUNT I
### (Violation of the TCPA)

28. Plaintiff re-alleges and incorporates Paragraphs one (1) through twenty-seven (27) above as if fully stated herein.

29. None of Defendant's autodialer calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

30. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff, especially for each autodialer call made to Plaintiff's cellular telephone after Plaintiff notified Defendant in February, 2012, that Defendant was calling the wrong number, that he did not owe the subject debt, and to stop calling Plaintiff.

31. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, actual damages, punitive damages, costs, interest, and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ *Harry F. Bell, Jr.*
Harry F. Bell, Jr., Esquire
The Bell Law Firm, PLLC
P.O. Box 1732
30 Capital Street
Charleston, WV 25326
Tele: (304) 345-1700
Fax: (304) 345-1715
West Virginia Bar #: 297
hfbell@belllaw.com
Attorney for Plaintiff


/s/ *Michael J. Vitoria*
Michael J. Vitoria, Esquire
Florida Bar # 0135534
William Peerce Howard, Esquire
Florida Bar # 0103330
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
MVitoria@forthepeople.com
WHoward@forthepeople.com
Attorney for Plaintiff