**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**CHESTER MOORE,**

                Plaintiff,

**v.**                                    **CIVIL ACTION NO.: 3:13-CV-36**
                                    **(JUDGE GROH)**

**DISH NETWORK L.L.C.,**

                Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Currently pending before the Court are Plaintiff Chester Moore's Renewed Motion for Partial Summary Judgment [ECF 107] and Defendant DISH Network L.L.C.'s Motion for Summary Judgment [ECF 108]. For the following reasons, the Court **GRANTS IN PART** Moore's Renewed Motion for Partial Summary Judgment and **GRANTS IN PART** DISH's Motion for Summary Judgment.

### I. Background

#### A.    Facts

On December 19, 2011, Chester Moore signed an application with Cintex wireless for a cell phone subsidized by the federal Lifeline program. At the time of his application, Moore had a cell phone with another service provider through that program. The Lifeline program provides low-income consumers with subsidized cell phone service. See 47 C.F.R. § 54.401. To qualify for this program, "a consumer must not already be receiving

a Lifeline service." Id. § 54.409(c). In response to his application, Cintex provided Moore with a cell phone with a number ending in 2882.

Moore claims that, after he received the Cintex cell phone, DISH Network L.L.C. called the 2882 number multiple times between January 2012 through August 2012 from numbers ending in 8047 and/or 8290. Am. Compl. ¶ 14. Moore has never been a DISH customer.

DISH admits that it called the 2882 number thirty-one times regarding a customer's past due account from the 8047 number. Specifically, it is undisputed that DISH made the following thirty-one phone calls to the 2882 number:

1.    1/8/12 at 2:49 p.m.

2.    1/10/12 at 11:17 a.m.

3.    1/14/12 at 3:23 p.m.

4.    1/26/12 at 1:51 p.m.

5.    1/28/12 at 10:42 a.m.

6.    1/29/12 at 3:58 p.m.

7.    1/31/12 at 1:43 p.m.

8.    2/8/12 at 3:00 p.m.

9.    2/10/12 at 3:34 p.m.

10.   2/10/12 at 3:35 p.m.

11.   2/14/12 at 12:46 p.m.

12.   2/15/12 at 12:42 p.m.

13.   2/16/12 at 11:12 a.m.

14.   2/18/12 at 3:56 p.m.

15.  2/24/12 at 6:30 p.m.

16.  2/25/12 at 10:49 a.m.

17.  3/6/12 at 1:20 p.m.

18.  3/6/12 at 5:25 p.m.

19.  3/12/12 at 3:35 p.m.

20.  3/20/12 at 3:19 p.m.

21.  3/26/12 at 11:42 a.m.

22.  5/29/12 at 12:11 p.m.

23.  6/4/12 at 9:43 a.m.

24.  6/10/12 at 9:31 a.m.

25.  6/16/12 at 8:33 a.m.

26.  6/22/12 at 8:41 a.m.

27.  6/28/12 at 9:52 a.m.

28.  7/5/12 at 11:33 a.m.

29.  7/11/12 at 12:51 p.m.

30.  7/17/12 at 12:22 p.m.

31.  7/23/12 at 8:34 p.m.

DISH made these calls using a Cisco UCCE Outbound Option, Version 8.5.4 dialer ("Cisco Dialer"). A prerecorded message was played on all calls except for calls 1, 4 through 7, 11 through 18, 20, and 21 because those calls were not met with a positive voice (i.e., no one answered the call).

During the period in which these calls occurred, Moore called DISH several times and informed DISH that it was calling the wrong number and asked DISH to stop calling the

2882 number.  On June 11, 2012, in response to one of these calls, DISH added the 2882 number to its do-not-call list.  Pl.'s Notice of Filing, Oct. 29, 2013, ECF 48-7 at 8. Additionally, DISH's notes for the account underlying the phone calls reflect that Moore called DISH on June 22, 2012, July 12, 2012, and July 19, 2012 concerning the calls to the 2882 number.  Specifically, these notes read: (1) June 22 - "added [the 2882 number] to the internal DNC list"; (2) July 12 - "stated Chester (not a DISH customer) called and stated that he was getting calls to his phone [the 2882 number]"; and (3) July 19 - "Mr Chester Moore, upset w/ calls on cell phn, says contact 4 months, phn # no longer belongs." Pl.'s Notice of Filing, Oct. 29, 2013, ECF 48-5 at 47-48 (capitalization omitted).

### B.    Procedural History

On March 22, 2013, Moore filed a complaint raising the single claim that DISH violated the Telephone Consumer Protection Act ("TCPA") each time it called the 2882 number.  On October 29, 2013, Moore moved for partial summary judgment, seeking a finding that DISH is liable for the thirty-one calls it made to the 2882 number.  DISH moved for the Court to defer consideration of this motion or deny it, arguing that more time was needed for discovery.  The Court denied Moore's motion pursuant to Federal Rule of Civil Procedure 56(d) because DISH did not have adequate time to conduct discovery to oppose the motion.

Additionally, Moore moved to amend his complaint to add The CBE Group, Inc., a third-party collection agent, as a party because he discovered it called the 2882 number concerning the past due DISH account.  The Court granted this motion.  Moore later voluntarily dismissed The CBE Group, Inc. from this matter.

On August 14, 2014, Moore filed a Renewed Motion for Partial Summary Judgment. Moore again argues he is entitled to summary judgment as to the thirty-one phone calls that DISH admits it made to the 2882 number. He seeks a finding that DISH is liable for these calls and an award of statutory damages. On August 15, 2014, DISH filed a Motion for Summary Judgment, arguing that it is not liable for the thirty-one calls or any additional calls made to the 2882 number.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248.

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### III. Discussion

The TCPA prohibits the making of a call to a cell phone in the following circumstances:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
> >
> > . . .
> >
> > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii). "A person or entity" can bring a claim to recover the greater of actual damages or $500 for a violation of § 227(b)(1)(A)(iii). Id. § 227(b)(3). A court may award treble damages for a willful or knowing violation. Id.

Moore requests that the Court find DISH liable for the thirty-one calls that DISH admits it made to the 2882 number and award him damages in the amount of $500 for calls 1 through 24 and treble damages for calls 25 through 31.

6

DISH argues that it is not liable for these calls, but does not dispute Moore's requested damages should the Court find liability. In contesting liability, DISH makes the following arguments that relate to all thirty-one calls: (1) Moore cannot recover because he violated the Lifeline program when obtaining the cell phone underlying this case; (2) Moore cannot recover because he was not charged for the calls; and (3) Moore lacks statutory standing because he is not the "called party" referenced in the TCPA. Next, DISH argues it is entitled to summary judgment as to calls 1, 4 through 7, 11 through 18, 20, and 21 because it did not make them using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. Then, DISH contends Moore cannot recover for calls 30 and 31 because he lacks Article III and statutory standing. Finally, DISH argues that, to the extent Moore seeks to recover for calls made from the 8290 number or any calls in addition to those DISH has admitted, Moore cannot do so because there is no evidence connecting DISH to the 8290 number or any other calls. These arguments, except that concerning liability for additional calls, all present issues of first impression in the Fourth Circuit.

### A. Whether Moore Cannot Recover Because He Violated the Lifeline Program

DISH argues the Court should preclude Moore from recovering under the TCPA on the ground that he should not profit from a wrongful act—i.e., his possession of the Cintex cell phone in violation of the Lifeline program. The plain language of the TCPA does not exempt calls made to a cell phone that an individual obtained through a wrongful act. See 47 U.S.C. § 227(b)(1)(A)(iii). DISH also does not cite any case where a court has dismissed a claim on such a basis. Acknowledging that this defense has no basis in the TCPA or case law concerning the TCPA, DISH urges that the Court should preclude Moore from recovering as a matter of public policy because, but for Moore's violation of the

Lifeline program, DISH would not have called him. In making this argument, DISH relies on five cases—Snyder v. PNC Bank, NA, Civil Action No. 3:12-cv-2, 2013 WL 1089877 (E.D. Tenn. Mar. 15, 2013), Audiology Distribution, LLC v. Hawkins, Civil Action No. 5:13cv154, 2013 WL 6583849 (N.D.W. Va. Dec. 16, 2013), Metrix Warehouse, Inc. v. Daimler-Benz Aktiengesellschaft, 828 F.2d 1033 (4th Cir. 1987), Prudential Insurance Co. of America v. Tull, 690 F.2d 848 (4th Cir. 1982), and Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231 (1959). Moore contends that all of these cases are distinguishable. The Court agrees and therefore declines to create an exception to TCPA liability.

First considering Snyder, that case is not binding on this Court and, regardless, is not persuasive. Snyder involved a dispute over a debt owed by a credit and checking account holder to PNC Bank. 2013 WL 1089877, at *1. The account holder sued PNC, alleging it breached a contract to allow her to repay the debt on a certain payment plan. Id. at *1-2. There was an issue, however, concerning whether the account holder breached that agreement because, at a certain point, she had insufficient funds to make payments under the plan. Id. at *4-5. The account holder argued that the court should excuse her breach because PNC's debiting of her account in contravention of the terms of their agreement caused her to lack sufficient funds to make payments. Id. at *4. In addressing that defense, the court stated that "one of the most fundamental maxims underpinning law is that one ought not be permitted to profit from their own wrongs" and reviewed various contexts in which courts have applied that maxim. Id. The court then found that the account holder's breach was excusable because it "was no fault of her own but initiated by allegedly surreptitious behavior" of PNC. Id. at *5. In contrast, here, Moore's act of obtaining a second cell phone through the Lifeline program, though wrongful, did not cause

DISH to commit the wrongful act of violating the TCPA. Thus, <u>Snyder</u> rests on a principle—that one party's wrongful act directly brought about the wrongful act of the other party—that does not apply in this case.

<u>Audiology Distributions</u> also is not binding authority and dealt with a situation distinct from this case. In <u>Audiology Distributions</u>, HearUSA hired the defendant as an audiologist. 2013 WL 6583849, at *1-2. The audiologist signed an employment agreement that contained a covenant prohibiting her from competing with HearUSA within ten miles of where she provided services for HearUSA. <u>Id.</u> at *1. Despite this agreement, the audiologist left HearUSA, opened her own audiology business less than three miles from a HearUSA location, and solicited several HearUSA patients. <u>Id.</u> at *2. HearUSA filed suit, seeking, among other things, a preliminary injunction to enjoin the audiologist from competing during the pendency of the case. <u>Id.</u> at *1. In considering whether an injunction would be in the public's interest (one of the factors relevant to the analysis), the district court noted that "the public certainly has an interest in enforcing valid contracts and ensuring that [the audiologist] does not profit from her own wrongdoing" and balanced that interest against the lack of a sufficient showing of irreparable harm to HearUSA. <u>Id.</u> at *6. In essence, <u>Audiology Distribution</u> involved a situation where one party's conduct (the audiologist's) was the direct cause of the harm underlying the lawsuit—the violation of a non-compete covenant. That is not the case here because Moore's wrongful act did not cause any harm to DISH. Indeed, it is DISH's alleged violations of the TCPA that directly led to this lawsuit. Thus, <u>Audiology Distribution</u> is not persuasive.

Turning to <u>Metrix Warehouse</u>, DISH relies on a portion of this case where the Fourth Circuit reviewed a district court's decision to set aside a jury's award of damages in an antitrust action. <u>See</u> 828 F.2d at 1042-43. In doing so, the Fourth Circuit stated that "a wrongdoing defendant should not profit at the expense of his victim where it is his own anticompetitive conduct that precludes direct and specific proof of damage." <u>Id.</u> at 1043 (citations omitted). This principle does not translate to this case because DISH is not a "victim" of Moore's wrongful act. Indeed, it is DISH's alleged violations of the TCPA that are the wrongs giving rise to this case. If anyone, those who funded the Lifeline program are the victims of Moore's actions. Thus, this case also does not support DISH's argument.

The same is true for <u>Prudential Insurance Co.</u> In that case, a woman who was convicted of murdering her husband appealed from a judgment awarding the proceeds of her husband's life insurance policy to her stepchildren. <u>Prudential Insurance Co.</u>, 690 F.2d at 848. The Fourth Circuit affirmed the decision, stating that "[f]ederal law recognizes that the beneficiary's claim is barred by the equitable defense: 'No person should be permitted to profit from his own wrong.'" <u>Id.</u> at 849. The woman therefore could not recover because her act of murdering her husband triggered the availability of the life insurance proceeds. Unlike the "murdering heir," however, it cannot be said that Moore took the wrongful act of obtaining the Cintex phone for the purpose of recovering under the TCPA. Indeed, DISH's calls to the 2882 number brought about this matter, not Moore's violation of the Lifeline program. The policy underlying <u>Prudential Insurance Co.</u> therefore does not translate to this case.

Finally, in <u>Glus</u>, the Supreme Court held that estoppel was a defense to the statute of limitations applicable to the plaintiff's claim under the Federal Employers' Liability Act.

10

See 359 U.S. at 231-35.  The plaintiff alleged that the defendant had induced him to file suit late by representing that he had seven years to do so.  Id. at 231-32.  The Supreme Court held the lower court erred by dismissing the case as untimely because the plaintiff could proceed if he could prove that the defendant's agents "conducted themselves in such a way that [he] was justifiably misled into a good-faith belief that he could begin his action at any time within seven years after it had accrued."  Id. at 235.  In reaching this conclusion, the Supreme Court drew on "the maxim that no man may take advantage of his own wrong."  Id. at 232.  Glus, however, applied that maxim in a situation where the defendant's wrongdoing, if proven, was the direct cause of the plaintiff's harm–the untimely nature of his claim.  See id. at 231-35.  Here, in contrast, Moore's wrongful act did not cause DISH any harm.  DISH's alleged violations of the TCPA are the harm at issue in this case, and DISH made the phone calls that allegedly caused those violations independently of Moore's violation of the Lifeline program.  Thus, this case also does not support DISH's position.

In sum, DISH's public policy defense has no basis in the TCPA and all of the cases that DISH relies on for this defense applied the general principle that an individual should not profit from his wrongful acts in circumstances that are distinguishable from this case. Accordingly, the Court rejects DISH's argument that Moore's violation of the Lifeline program precludes him from recovering for DISH's independent violations of the TCPA.

### B.     Whether Moore Must Have Been Charged for the Calls to Recover

Next, DISH contends that Moore cannot recover because the TCPA requires that he be charged for the calls made to the 2882 number.  Moore does not dispute that he was not charged for any of the calls or the cell phone, but counters that the TCPA's terms do not impose this requirement.

11

The TCPA applies to calls made "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, *or any service for which the called party is charged for the call.*"  47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  DISH argues that the phrase "for which the called party is charged for the call" modifies all services listed, thereby requiring that Moore be charged for each call.  Moore avers that, under the rule of last antecedent, the charge requirement does not apply to calls made to cell phones.

The "rule of last antecedent" provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."  United States v. Hayes, 555 U.S. 415, 425 (2009).  Applying this rule, "for which the called party is charged for the call" modifies only "any service."  Page v. Regions Bank, 917 F. Supp. 2d 1214, 1220 (N.D. Ala. 2012); see also Gutierrez v. Barclays Grp., Civil Action No. 10CV1012 DMS BGS, 2011 WL 579238, at *5 (S.D. Cal. Feb. 9, 2011).  Numerous other courts have interpreted the phrase "for which the called party is charged for the call" in this manner.  See  Osorio v. State Farm Bank, 746 F.3d 1242, 1257-58 (11th Cir. 2014) (analyzing § 227(b)(1)(A)(iii) under the rule of last antecedent and other canons of statutory interpretation to hold that plaintiff was "not required to prove that he was charged individually for each" call); Manno v. Healthcare Revenue Recovery Grp., 289 F.R.D. 674, 683 (S.D. Fla. 2013) (holding "the TCPA does not require the plaintiff to be 'charged for' the calls in order to have standing to sue"); Page, 917 F. Supp. 2d at 1220 (applying the rule of last antecedent to find "charged for the call" only applied to "any service"); Gutierrez, 2011 WL 579238, at *5-6 (same); Buslepp v. Improv Miami, Inc., Civil Action No. 12-60171-

CIV, 2012 WL 1560408, at *2 (S.D. Fla. May 4, 2012) (rejecting argument that plaintiff needed to prove he was charged for each call to his cell phone to recover under TCPA).

DISH points out that <u>Knutson v. Reply!, Inc.</u>, Civil Action No. 10–CV–1267, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) and <u>Moriarty v. Nationstar Mortgage, LLC</u>, Civil Action No. 1:13-cv-855, 2013 WL 335448 (E.D. Cal. July 3, 2013) required that a plaintiff show he was charged for the call to recover for a violation of § 227(b)(1)(A)(iii) . In <u>Knutson</u>, the court stated that the TCPA requires a plaintiff to establish "that [d]efendant made the call; [p]laintiff was charged for the call; and the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." 2011 WL 291076, at *1. The <u>Knutson</u> court, however, did not explain why it interpreted the TCPA as requiring that a plaintiff be charged for the call or otherwise analyze the statute. <u>Id.</u> The same is true for <u>Moriarty</u>. <u>Moriarty</u> directly quoted <u>Knutson</u> for the proposition that a plaintiff must prove she was charged for the call. <u>Moriarty</u>, 2013 WL 335448, at *7. The <u>Moriarty</u> court did not analyze the TCPA or explain why it adopted <u>Knutson</u>'s statement of the elements of a TCPA claim. <u>Id.</u> These cases are unpersuasive because a careful analysis of the TCPA–which was not done in <u>Knutson</u> and <u>Moriarty</u>–reveals no requirement that Moore be charged for a call to recover. Accordingly, the Court holds that Moore need not prove that he was charged for each call or the cell phone to establish DISH's liability for violating § 227(b)(1)(A)(iii).

### C. Whether Moore Lacks Statutory Standing Because He Is Not the "Called Party"

DISH argues that Moore lacks statutory standing on two grounds. First, DISH avers that only the intended recipient of its calls, the DISH account holder, is the "called party" referenced in § 227(b)(1) and therefore the only person with standing to sue under the TCPA for the calls. Alternatively, DISH maintains that, to have standing, Moore must be

the regular user and carrier of the cell phone.  DISH argues Moore would not fall under this definition, alleging he testified in his deposition that he used the 2882 number only when he ran over minutes on his other cell phone and that his daughter and granddaughter used the cell phone as well.

The Fourth Circuit has not considered who has standing to sue for a violation of § 227(b)(1)(A)(iii).  Statutory standing "concerns whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action."  CGM, LLC v. BellSouth Telecomm., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (citation and quotation marks omitted).  When considering whether Moore has statutory standing, the Court considers whether he "is a member of the class given authority by [the TCPA] to bring suit."  Id. (citation and quotation marks omitted).  This "task is essentially one of statutory construction."  Id. (citation and quotation marks omitted).  "Normally, where the statutory language provides a clear answer, [the] analysis begins and ends with that language."  Id. at 53 (citation and quotation marks omitted).

Considering the plain language of the TCPA, the terms of the statute do not limit standing to the "called party."  The TCPA simply states that "a person or entity" can bring such a claim.  47 U.S.C. § 227(b)(3).  This provision therefore covers Moore as the undisputed subscriber of the 2882 number.  Indeed, numerous courts that have considered the TCPA's standing provision have concluded that it allows any person to sue, not just the "called party."  See Manno, 289 F.R.D. at 682 ("[T]he standing provision of the TCPA is quite broad in that any 'person or entity' injured by a violation of the statute may seek redress . . . ."); Swope v. Credit Mgmt., LP, Civil Action No. 4:12CV832,  2013 WL 607830, at *3 (E.D. Mo. Feb. 19, 2013) ("By its plain language, the TCPA grants standing to any

14

'person or entity.'"); Page, 917 F. Supp. 2d at 1217 (rejecting argument that only "called party" has standing after finding "no limitation in the text of the statute to indicate that only a 'called party' may assert a TCPA claim"); Harris v. World Fin. Network Nat'l Bank, 867 F. Supp. 2d 888, 894 (E.D. Mich. 2012) ("[T]he TCPA . . . plainly grants standing to 'any person or entity' . . . ."); Kane v. Nat'l Action Fin. Servs., Inc., Civil Action No. 11-cv-11505, 2011 WL 6018403, at *7 (E.D. Mich. Nov. 7, 2011) (same); D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC, 791 F. Supp. 2d 622, 624-25 (N.D. Ill. 2011) (same and rejecting argument that consent exception to § 227(b)(1)(A)(iii) liability limited standing to "called party"). Courts have also recognized that a person's status as the subscriber of the phone at issue grants him standing under this broad standing provision. See Fillichio v. M.R.S. Assocs., Inc., Civil Action No. 09-61629-CIV, 2010 WL 4261442, at *2 (S.D. Fla. Oct. 19, 2010) (granting summary judgment for cell phone account holder); Gutierrez, 2011 WL 579238, at *5 (finding "it is the [telephone] subscriber who has standing to sue for violations of the TCPA"). Accordingly, Moore has standing to sue under the TCPA because he is the subscriber of the cell phone at issue. The Court does not opine as to which, if any, other types of relationships to a cell phone give rise to standing under the TCPA.

Even if only the "called party" had standing under the TCPA, the plain terms of § 227(b)(1)(A)(iii) do not support DISH's argument that the called party is limited to the intended recipient of its calls. No portion of § 227 states that only the intended recipient of a call can recover under it. Neither "intended recipient" nor a similar term appear anywhere in § 227. See Soppet v. Enhanced Recovery Co., 679 F.3d 637, 640 (7th Cir. 2012) ("The phrase 'intended recipient' does not appear anywhere in § 227, so what

justification could there be for equating 'called party' with 'intended recipient of the call'?"). In fact, the one location where "recipient" appears in this provision indicates that any recipient (not just the intended recipient) can recover. "[R]ecipient" appears in the introductory language of § 227(b)(1)(A)(iii) as follows: "It shall be unlawful for any person within the United States, or any person outside the United States if the *recipient* is within the United States." 47 U.S.C. § 227(b)(1) (emphasis added). Congress did not qualify "recipient" in any way when describing how liability attaches under the TCPA, let alone add the additional requirement that the recipient be the intended recipient from the caller's perspective. Further, the instances where "called party" appears in § 227(b)(1)(A)(iii) are not reasonably subject to the restrictive reading DISH urges. First, § 227(b)(1)(A) provides that a call made to a cell phone is exempt from liability when it is made "with the prior express consent of the called party." This provision references the "called party" a second time by explaining that liability attaches for calls made to a number assigned to "a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." Id. § 227(b)(1)(A)(iii). Logically reading "called party" in these contexts, the individual called could be DISH's customer, but it could also be an unintended recipient, like Moore. See Soppet, 679 F.3d at 639-40 (analyzing each instance of "called party" in the TCPA and finding no support for interpreting it as limited to the intended recipient). The TCPA therefore contains no language indicating that one must be the individual the caller intended to reach to sue under it. A vast majority of the courts that have addressed this issue have interpreted "called party" in this manner and allowed unintended recipients of calls, like Moore, to recover for violations of § 227(b)(1)(A)(iii). Osorio, 746 F.3d at 1250-52

(rejecting contention "that the 'intended recipient' is the 'called party' referred to in 47 U.S.C. § 227(b)(1)(A)"); id. at 643 (same and holding "'called party' . . . means the person subscribing to the called number at the time the call is made"); Paradise v. Commonwealth Fin. Sys., Inc., Civil Action No. 3:13-CV-00001, 2014 WL 4717966, at *3 (M.D. Pa. Sept. 22, 2014) (holding "called party" does not mean the intended recipient); Fini v. DISH Network L.L.C., 955 F. Supp. 2d 1288, 1296 (M.D. Fla 2013) (concluding "that possessing standing as a 'called party' . . . does not require the plaintiff to have been the intended recipient of the call"); Manno, 289 F.R.D. at 682; Page, 917 F. Supp. 2d at 1219; Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1322 (S.D. Fla. 2012) (finding "called party" was the actual, not intended, recipient of calls). Accordingly, the Court joins those courts and rejects DISH's argument that the "called party" referenced in the TCPA limits standing to only the intended recipient of its calls because it has no support in the statute's plain terms.

Turning to DISH's contention that Moore must be the cell phone's regular user and carrier in addition to its subscriber to recover, no such requirement appears in the TCPA. As noted, Moore, as the undisputed subscriber of the 2882 number, fits into the TCPA's broad standing provision. See 47 U.S.C. § 227(b)(3). While several district courts have found that a cell phone's regular user and carrier can recover under the TCPA, that generally occurs in cases finding that a plaintiff had standing even though he or she was not the subscriber, something that is not an issue in this case. See Olney v. Progressive Cas. Ins. Co., __ F. Supp. 2d __, 2014 WL 294498, at *5 (S.D. Cal. 2014) (holding "that the regular user of a cellular telephone has standing to bring a claim under the TCPA, regardless of whether he is responsible for paying the bill"); Fini, 955 F. Supp. 2d at 1296

(holding plaintiff, who was not subscriber, had TCPA standing "because she is the regular user and carrier of the phone"); Agne v. Papa John's Int'l, Inc., 286 F.R.D. 559, 565 (W.D. Wash. 2012) (finding authorized user of shared cellular plan had standing under TCPA); Page, 917 F. Supp. 2d at 1219 (holding plaintiff had TCPA standing even though number was registered in someone else's name because he was the cell phone's "regular user and carrier"). Indeed, that was true in the very case that DISH relies on for its argument that Moore must be the phone's regular user and carrier, Fini v. DISH Network L.L.C. In Fini, the regular user of a cell phone that was registered in her husband's name sued DISH for violations of § 227(b)(1)(A)(iii). 955 F. Supp. 2d at 1290. DISH argued in that case that the plaintiff lacked statutory standing because the phrase "called party" limited standing to the subscriber. Id. at 1296. The Fini court declined to adopt this narrow view, instead holding (without opining as to whether it would otherwise be necessary for the plaintiff to be a subscriber to have standing) that the plaintiff had "standing because she [was] the regular user and carrier of the phone." Id. In doing so, the court reasoned:

> Defendant offers the Black's Law definition of subscriber, confining the term to an individual "who enters into '[a]n oral or a written agreement to contribute a sum of money or property, gratuitously or with consideration, to a specific person or for a specific purpose.'" However, none of the cases cited by Defendant in support of its argument construe the term "subscriber" so narrowly. Gutierrez v. Barclays Group is the only case to base its holding on the plaintiff's status as a subscriber, and that case failed to define the term at all in the scant two sentences it devoted to the issue. No. 10cv1012 DMS (BGS), 2011 WL 579238, at *5 (S.D. Cal. Feb. 9, 2011).

> Other cases cited by Defendant define "subscriber" more broadly and in a fashion that would encompass Plaintiff: "this Court finds that Plaintiff was the called party because [the defendant] intended to call Plaintiff's cellular telephone number and Plaintiff is *the regular user and carrier of the phone.*" D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) (emphasis added); see also Swope, 2013 WL 607830 at *3 (adopting definition from D.G. ex rel. Tang); Page, 917 F.Supp.2d at 1219-20 (same); Tang v. Medical Recovery Specialists,

18

LLC, No. 11 C 2109, 2011 WL 6019221, at *2 (N.D. Ill. July 7, 2011) (same).
Given the plethora of contractual arrangements available to wireless
customers, it is not surprising that so many courts would adopt the practical
definition advocated by Plaintiff.

Id. (internal citation omitted). Thus, Fini stands only for the proposition that a regular user

and carrier of a cell phone who is not the subscriber has standing under the TCPA.

Accordingly, the Court rejects DISH's argument that Moore must be the regular user and

carrier of the 2882 number because his status as the subscriber of the cell phone alone

confers standing upon him.

In sum, Moore fits into the TCPA's broad standing provision because he is the cell

phone subscriber. He therefore has standing under the TCPA for all thirty-one calls.

> **D.** **Whether DISH Is Entitled to Summary Judgment on Calls 1, 4-7, 11-18, 20, and 21**

DISH argues that it is not liable for calls 1, 4 through 7, 11 through 18, 20, and 21

because the Cisco Dialer is not an ATDS and these calls did not play a prerecorded

message. Moore counters that the Cisco Dialer is a predictive dialer that, under FCC rules,

is an ATDS. DISH responds that the Court should focus exclusively on the TCPA's text

rather than the FCC decisions and, even if those decisions apply, the Cisco Dialer is not

a predictive dialer.

The TCPA defines an ATDS as "equipment which has the capacity (A) to store or

produce telephone numbers to be called, using a random or sequential number generator;

and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

In 2002, the FCC issued a notice of proposed rulemaking that solicited comments

concerning the definition of an ATDS and "whether it is necessary to identify the

technologies section 227 is designed to address." In the Matter of Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991, 17 F.C.C.R. 17459, 17473

(Sept. 18, 2002).  The FCC explained its reasoning for seeking comment as follows:

> The legislative history of the TCPA suggests that autodialer-generated calls are more intrusive to the privacy concerns of the called party than live solicitations.  An autodialer can generate far more calls to residences than a telemarketer can manually.  In addition, an autodialer is frequently used to send artificial or prerecorded messages, which the legislative history suggests are often a greater nuisance and invasion of privacy than calls placed by "live" persons.  We seek comment on this reading of the legislative history and whether Congress intended the definition of "automatic telephone dialing system" to be broad enough to include any equipment that dials numbers automatically, either by producing 10-digit telephone numbers arbitrarily or generating them from a database of existing telephone numbers.  The Commission recognizes that in the last decade new technologies have emerged to assist telemarketers in dialing the telephone numbers of potential customers.  More sophisticated dialing systems, such as predictive dialers and other electronic hardware and software containing databases of telephone numbers, are now widely used by telemarketers to increase productivity and lower costs.  Therefore, we ask commenters to provide information on the various technologies used to dial telephone numbers.  We invite comment on the use of random and sequential number generators and whether an autodialer can generate phone calls from a database of existing numbers.

Id. at 17473-74 (footnotes omitted).  Then, the FCC stated that it was seeking specific

comment regarding whether a predictive dialer is an ATDS:

> We seek specific comment on whether a predictive dialer, as a form of automatic telephone dialing system, is subject to the ban on calls to emergency lines, health care facilities, paging services, and any service for which the called party is charged for the call. Specifically, we ask whether a predictive dialer that dials telephone numbers using a computer database of numbers falls under the TCPA's restrictions on the use of autodialers. We seek comment on whether the Commission should adopt rules to further restrict the use of predictive dialers to dial consumers' telephone numbers.

Id. at 17475 (footnotes omitted).

On July 3, 2003, the FCC released a report and order noting that most industry

members had argued that a predictive dialer is not an ATDS.  In the Matter of Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R.

14014, 14090 (July 3, 2003) [hereinafter 2003 FCC Order]; see also Griffith v. Consumer

Portfolio Serv., Inc., 838 F. Supp. 2d 723, 725-26 (N.D. Ill. 2011).  The FCC summarized

their position as follows:

> Most industry members that commented on the issue of autodialed calls
> argue that predictive dialers do not fall within the statutory definition of
> "automatic telephone dialing system," primarily because, they contend,
> predictive dialers do not dial numbers "randomly or sequentially."  Rather,
> they state that predictive dialers store pre-programmed numbers or receive
> numbers from a computer database and then dial those numbers in a
> manner that maximizes efficiencies for call centers.

2003 FCC Order, 18 F.C.C.R. at 14090.  The FCC rejected that argument, concluding "that

a predictive dialer falls within the meaning and statutory definition of 'automatic telephone

dialing equipment' and the intent of Congress."  Id. at 14093.  In doing so, the FCC found

that, when predictive dialer hardware is "paired with certain software," it "has the capacity

to store or produce numbers and dial those numbers at random, in sequential order, or

from a database of numbers."  Id.  at 14091.  The FCC also noted that "the evolution of the

teleservices industry has progressed to the point where using lists of numbers is far more

cost effective," but that "[t]he basic function of such equipment . . . has not changed–the

*capacity* to dial numbers without human intervention."  Id. at 14092.

In a 2008 Declaratory Ruling, the FCC affirmed "that a predictive dialer constitutes

an automatic telephone dialing system and is subject to the TCPA's restrictions on the use

of autodialers."   In the Matter of Rules and Regulations Implementing the Telephone

Consumer Protection Act of 1991, 23 F.C.C.R. 559, 566 (Jan. 4, 2008) [hereinafter 2008

FCC Ruling].  The FCC also recognized that this ruling applied to debt collectors by stating:

> With this ruling, however, creditors and debt collectors may use predictive
> dialers to call wireless phones, provided the wireless phone number was
> provided by the subscriber in connection with the existing debt. We note,
> however, that where the subscriber has not made the number available to the

crerditor regarding the debt, we expect debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers, and to comply with the TCPA's prohibition on telephone calls using an autodialer or an artificial or prerecorded voice message to wireless numbers.

Id. at 567.

DISH argues that the Court should disregard these FCC rulings on two grounds–that the text of the TCPA sufficiently defines an ATDS and the FCC's orders only apply to cases involving telemarketing. The first argument is not persuasive because district courts must defer to FCC rulings. See 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a); see also Davis v. Diversified Consultants, Inc., Civil Action No. 13-10875-FDS, 2014 WL 2944864, at *5 (D. Mass. June 27, 2014) (stating that the FCC's ruling that a "predictive dialer" qualifies as an ATDS "is entitled to deference"); Sterk v. Path, Inc., __ F. Supp. 2d __, 2014 WL 2443785, at *4 (N.D. Ill. 2014) (noting that "a district court gives great weight, if not controlling weight, to final decisions of the FCC implementing and interpreting the TCPA"); Penn v. NRA Grp., LLC, Civil Action No. JKB-13-0785, 2014 WL 2986787, at *3 (D. Md. July 1, 2014); Griffith, 838 F. Supp. 2d at 726 (noting that the FCC's final orders bind district courts). Moreover, several district courts have found that a predictive dialer is an ATDS based on these rulings. See Davis, 2014 WL 2944864, at *4-5; Sterk, 2014 WL 2443785, at *4; Griffith, 838 F. Supp. 2d at 725-27. Further, the FCC's ruling that a predictive dialer is an ATDS applies in cases involving debt collection calls, not just telemarketing calls. See Griffith, 838 F. Supp. 2d at 727 (rejecting argument "that the TCPA only applies to telemarketing, not debt collection"). The FCC concluded that predictive dialers fall under the TCPA's definition of an ATDS without limiting that ruling based on the purpose for which a call is made. See 2003 FCC Order, 18 F.C.C.R. at 14093. Indeed, as noted, the FCC

recognized in its 2008 Declaratory Ruling that its predictive dialer rule applies to debt

collection calls by explaining how debt collectors can use predictive dialers without violating

the TCPA.  <u>See</u> 2008 FCC Ruling, 23 F.C.C.R. at 567.   Accordingly, a predictive dialer is

an ATDS pursuant to the FCC's 2003 Order and 2008 Ruling.

The Court must now determine whether the Cisco Dialer is a predictive dialer.  DISH

argues that its system is not a predictive dialer based exclusively on the following portion

of an affidavit of Joey L. Montano, a Business Operations Manager for DISH:

> The Cisco Dialer that DISH uses: (a) is not configured, and does not have the capacity, to store or generate telephone numbers using a random or sequential number generator; (b) must be, but has not been, upgraded with separate software to give it the capacity to do so; (c) cannot function without a human generated list of telephone numbers provided by an external software source, *i.e.*, DISH's campaign manager; (d) the records that are contained in the "campaign" (defied as the outbound initiative for the purpose of the telephone call) are based on criteria for each individual "business owner" (defined as the division or business unit operated by humans within DISH) that owns the campaign; (e) requires a human operation analyst to process the human-generated list of telephone numbers by finding the appropriate list for each campaign and loading the campaign into the various lists; (f) requires the human operation analyst to import the appropriate text file into the campaign manager software for the correct campaign; and (g) does not have the capacity to randomly or sequentially generate telephone numbers without fundamentally changing the architecture of the hardware and software.

Montano Aff. ¶ 7, Aug. 15, 2014.  DISH contends that this affidavit shows there is extensive

human involvement in the processing and dialing of numbers that establishes it did not

make the calls with a predictive dialer.

In response to Montano's affidavit, Moore points to portions of Montano's deposition

testimony that clarify how DISH's dialing equipment functions.[1]  DISH's dialing system has

two parts—the Cisco hardware and the Campaign Manager software.  Montano Dep. 28:9-

---

[1] These facts are undisputed because DISH has not produced any evidence contradicting Montano's deposition testimony.

11, Feb. 5, 2014. Consistent with his affidavit, Montano testified that humans import phone numbers into the Campaign Manager software. Id. at 24:17-25:8. The phone numbers "reside in the Campaign Manager" until the Campaign Manager sends them to the dialer. Id. 26:2-3, 27:8-10. The dialer then "calls each record contained in the list in the order that they are delivered to the hardware." Id. at 30:22-24.

Here, it is apparent that DISH focuses on evidence of human involvement in the list-creation process to avoid the clear implication of the FCC's decision as applied to this case—that the Cisco Dialer is a predictive dialer. In its 2003 Order, the FCC defined a predictive dialer as having the "*capacity to store or produce numbers and dial those numbers* at random, in sequential order, or *from a database of numbers*" when paired with software. 2003 FCC Order, 18 F.C.C.R. at 14091 (emphasis added). The FCC did reference the lack of human involvement typical of a predictive dialer, but only to explain why it found a predictive dialer qualified as an ATDS. See id. at 14092. Thus, contrary to DISH's argument, it is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the Campaign Manager software. See Sterk, 2014 WL 2443785, at *4 (finding system was a predictive dialer despite fact that users of the defendant's service made their contact information available to the defendant because users' involvement was "essentially the same as when a call list is entered by a telemarketer in a database"). Because portions (c), (d), (e), and (f) of Montano's affidavit all allege facts concerning that part of DISH's call process, they carry no weight in the predictive dialer analysis. The same is true for the remainder of Montano's affidavit–portions (a), (b), and (g). This evidence demonstrates that the Cisco Dialer lacks the capacity to randomly or sequentially generate telephone numbers. Per the

24

2003 FCC Order, the Cisco Dialer can be a predictive dialer without that capacity. <u>See</u> 2003 FCC Order, 18 F.C.C.R. at 14091; <u>see also</u> <u>Davis</u>, 2014 WL 2944864, at *5 ("And even if . . . [the defendant's] system cannot dial randomly or sequentially, it is undisputed that [the system] is a 'predictive dialer' that dials from lists of numbers. The FCC rulings specifically account for the fact that technology has developed such that lists of numbers are more cost-effective than random or sequential numbers."). Simply put, DISH's equipment (the hardware dialer and software program) is a predictive dialer under the FCC's orders if it makes calls from a stored list of phone numbers without human intervention. <u>See</u> <u>Davis</u>, 2014 WL 2944864, at *5 (finding system that dialed automatically from lists of numbers was predictive dialer under FCC rulings); <u>Sterk</u>, 2014 WL 2443785, at *4 ("The undisputed facts show that the equipment used by [the defendant], which makes calls from a stored list without human intervention is comparable to the predictive dialers that have been found by the FCC to constitute an ATDS. . . . It is the ultimate calling from the list by the automated equipment that is the violation of the TCPA"); <u>Griffith</u>, 838 F. Supp. 2d at 727. That is exactly how the Cisco Dialer functioned per Montano's undisputed deposition testimony and affidavit. Lists of numbers are stored in the Campaign Manager (or "reside" there), those lists of numbers are transferred from the Campaign Manager to the dialer hardware without human intervention, and the dialer hardware automatically dials numbers from those lists. Accordingly, based on the undisputed deposition testimony and affidavit of Montano, the Court holds that DISH used an ATDS to call the 2882 number because there is no genuine dispute of material fact that the Cisco Dialer is a predictive dialer under the FCC's rulings.

As a final matter here, the Court notes that DISH contends that this Court would be setting a new precedent by finding that the Cisco Dialer is a predictive dialer. This is inaccurate because several other district courts have held that similar equipment is a predictive dialer. See Davis, 2014 WL 2944864, at *5-6; Sterk, 2014 WL 2443785, at *4; Griffith, 838 F. Supp. 2d at 727 (holding defendant's equipment was an ATDS based on dialer's ability to call numbers automatically from a list stored in a software file).

**E.      Whether Moore Has Standing as to Calls 30 and 31**

As to calls 30 and 31, DISH argues that Moore lacks Article III standing because a private investigator hired by Moore's counsel had the cell phone when those calls were made. Alternatively, DISH argues that Moore lacks statutory standing because he did not answer these calls.

The Fourth Circuit has stated that "it is well established that the 'injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000) (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)). Thus, because the Court has found that Moore has statutory standing as to all calls, he has standing under Article III to recover under the TCPA for calls 30 and 31. See id.; see also Manno, 289 F.R.D. at 681-82 (holding allegations that defendants violated the TCPA were sufficient to give the plaintiff Article III standing).

Moreover, the plain language of the TCPA does not require that Moore physically possess the cell phone a call occurs or answer a call to have standing. The TCPA makes it unlawful "to make any call using any automatic telephone dialing system or an artificial or prerecorded voice to any . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

26

By these terms, the making of each call from DISH to the 2882 number triggered liability. See Fillichio, 2010 WL 4261442, at *3 (holding "the prohibition in the TCPA applies to phone calls placed to cellular telephone numbers even if the intended recipient does not answer the calls" and stating "the mere act of placing the call that triggers the statute"). Accordingly, the Court finds that Moore has both statutory and Article III standing to bring a TCPA claim for calls 30 and 31.

**F.      Whether DISH Is Entitled to Summary Judgment on Calls Made from the 8290 Number and Any Additional Calls**

Finally, DISH moves for summary judgment to the extent that Moore seeks to hold it liable for calls made to the 2882 number from the 8290 number and any calls in addition to the thirty-one calls that DISH admits it made.

Here, Moore has neither offered evidence connecting DISH to the 8290 number nor presently argued that DISH is liable for any other calls made from that number to his cell phone.  Moore also has not produced evidence showing that DISH made any calls to the 2882 number other than the thirty-one calls DISH admits to making.  Indeed, there is no indication why, with discovery closed and trial soon commencing, Moore seeks only partial summary judgment.  Accordingly, the Court grants DISH's motion for summary judgment to the extent that Moore seeks to hold DISH liable for any calls made to the 2882 number from the 8290 number and any other calls beyond the thirty-one calls that DISH admits it made to the 2882 number because there is no evidence connecting DISH to any calls made to the 2882 number other than the thirty-one calls DISH admits it made.

Having rejected all of DISH's arguments that it is not liable for the thirty-one phone calls at issue, the Court now finds that there are no genuine issues of material fact concerning the elements of Moore's TCPA claim and that, based on the undisputed facts,

Moore has established liability.  In light of the Court's earlier findings, a plaintiff must establish four elements to succeed on a claim brought under § 227(b)(1)(A)(iii): (1) a call was made to "a cellular telephone service"; (2) the call was not "made for emergency purposes"; (3) the call was not made "with the prior express consent of the called party"; and (3) the call was made using an "automatic telephone dialing system or an artificial or prerecorded voice."  47 U.S.C. § 227(b)(1)(A); see also Harris, 867 F. Supp. 2d at 892 (outlining the elements of a TCPA claim).  There is no dispute that DISH made these calls to a cell phone to which Moore subscribed for non-emergency purposes and without Moore's consent.  DISH also made these calls using an ATDS or an artificial or prerecorded voice based on the Court's finding that DISH used a predictive dialer that qualifies as an ATDS and DISH's admission that a message using an artificial or prerecorded voice was played on several calls.[2]  Accordingly, the Court grants summary judgment in Moore's favor as to DISH's liability for the thirty-one phone calls.

Because DISH is liable for these calls, the Court now considers the damages that Moore is entitled to receive.  When a plaintiff succeeds on a TCPA claim, he can recover the greater of actual damages or $500 for each violation of § 227(b)(1)(A)(iii).  47 U.S.C. § 227(b)(3).  "If the court finds that the defendant willfully or knowingly violated" the TCPA, it may award treble damages.  Id.  "[T]he intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct."  Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 776 (11th Cir. 2011).

Moore seeks an award of $500 for each violation and treble damages for calls 25 through 31, which all occurred after DISH's June 11, 2012 attempt to add the 2882 number

---

[2]  The Court expresses no opinion as to whether, if DISH's equipment did not qualify as an ATDS, the calls that did not play a prerecorded message violated the TCPA.

to its do-not-call list.  DISH does not oppose argument that he is entitled to treble damages or offer evidence contradicting the basis of Moore's claim for treble damages.  Thus, it is undisputed that DISH knew that it was calling Moore, not the DISH account holder, at the 2882 number when it made calls 25 through 31 because Moore had advised DISH of its error by that time, which is reflected in DISH's own records.  Accordingly, because DISH knew that it was calling the wrong person but persisted in calling the 2882 number regardless of that knowledge, the Court finds that DISH willfully and knowingly violated Moore's rights under the TCPA when making calls 25 through 31.  See Harris, 867 F. Supp. 2d at 895-87 (awarding treble damages for calls made to plaintiff's cell phone after plaintiff notified defendant that it was calling the wrong number).  The Court therefore awards Moore treble damages for those violations.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** the Plaintiff's Renewed Motion for Partial Summary Judgment and **GRANTS IN PART** the Defendant's Motion for Summary Judgment.

The Court **GRANTS** summary judgment in the Plaintiff's favor as to the thirty-one calls that DISH admits it made to the 2882 number.  Having found in the Plaintiff's favor on liability, the Court **AWARDS** the Plaintiff statutory damages of $500 for twenty-four of the TCPA violations pursuant to 47 U.S.C. § 227(b)(3)(B) and **AWARDS** the Plaintiff treble damages for seven of the TCPA violations pursuant to 47 U.S.C. § 227(b)(3) because the Defendant made those calls after the Plaintiff notified the Defendant that it was calling the

wrong number. Accordingly, the Court **ENTERS** judgment in the Plaintiff's favor in the amount of **$22,500**.[3]

The Court **GRANTS** the Defendant's Motion for Summary Judgment to the extent that the Plaintiff seeks to hold the Defendant liable for calls made to the 2882 number from the 8290 number and any other calls in addition to the thirty-one calls for which DISH has been found liable.

Because no issues remain in dispute between the parties, the Court **DISMISSES** this action **WITH PREJUDICE**. The Court further **ORDERS** that this case be **STRICKEN** from this Court's active docket.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** October 15, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE

---

[3] This judgment is the sum of $12,000 in damages for the violations subject to a recovery of $500 per violation and $10,500 in damages for the violations subject to treble damages.